[Civ. No. 3308.  First Appellate District, Division One.—July 6, 1920.]

## WILLIAM B. ALEXANDER, Appellant, v. PANAMA MACARONI COMPANY (a Corporation), Respondent.

[1] CONTRACT—ACTION FOR DAMAGES—WITHDRAWAL OF OFFER BEFORE ACCEPTANCE—FINDING—EVIDENCE—APPEAL.—In this action for damages for breach of a contract claimed to have been entered into with the partnership of which plaintiff had been a member, whereby the partnership was made the exclusive selling agent for defendant's goods for a period of years, the evidence being sufficient to support the finding of the trial court that the letter which plaintiff contended constituted the contract between the parties was intended to be, and in fact was, a mere offer which was never accepted and that it was consequently inoperative, those conclusions were controlling on appeal.

APPEAL from a judgment of the Superior Court of Los Angeles County. Chas. Monroe, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. H. Foster and Albert A. Kidder, Jr., for Appellant.

Rupert B. Turnbull, Walter Van Pelt and Bertin Weyl for Respondent.

KNIGHT, J., *pro tem.*—This action was brought to recover damages for breach of contract. Judgment was for the defendant and plaintiff appeals.

[1]   The basis of the appellant's action is a letter dated April 9, 1915, addressed to Alexander-Callen & Co., and signed by respondent, which appellant contends constituted a contract whereby the firm of Alexander-Callen & Co., a copartnership, of which appellant was a member, was made the exclusive selling agent for respondent's goods for a period of ten years. Said letter reads as follows:

"We hereby agree to make you our exclusive selling agents for ten years beginning today and expiring April 9th, 1925. We will pay you a commission of fifteen cents per case (case contains 24 packages), when goods are introduced and the price of flour is normal. Said commission to be paid at end of each calendar month. We reserve the right to refuse business where customers' ratings do not justify credit. In consideration of the above commissions, you are to show an increase in our sales each consecutive year, unless impossible, such as panic, etc., causing business to decrease generally. We reserve the right to make the selling prices. The idea of this agreement is to work together in good faith, in building up a good business for the factory. We are to be consulted on all matters such as the territories you are to sell in, and how the goods are to be sold."

Respondent denies that said letter constituted the contract between the parties, and claims that it was intended to be, and in fact was, a mere offer which was never accepted by appellant and was by the respondent, on December 2, 1915, withdrawn, and that the only contract ever existing between the parties was an oral one whereby an agency was continued from month to month, and that on February 9, 1916, said oral agreement was terminated. Respondent also relies upon two other defenses, the first of which is that appellant at the time said letter was written, was a member of a copartnership which was, subsequent to the date of the letter and prior to the alleged breach, dissolved by the retirement of one of the members of the firm, which fact respondent contends terminated any contract of agency which may then have existed. The other defense is that the creation of the agency as contemplated by said letter was

made dependent upon the price of flour being "normal," and respondent claims that at no time since the ninth day of April, 1915, has the price of flour been, or is it now, normal.

The court found for respondent on all the issues, and it would seem that it is not necessary for us to extend our discussion beyond the defense first mentioned, for the reason that the question of whether or not the parties in fact operated under said offer as contained in said letter of April 9, 1915, as contended by appellant, or whether said offer was afterward withdrawn and the parties operated under an oral agreement from month to month, as contended by respondent, was purely a question of fact for the trial court, and upon which question the record shows there is a substantial conflict. In support of the conclusions reached by the trial court the evidence shows that at no time during the business relation between the parties did said copartnership sell the goods of respondent pursuant to the terms of the letter of April 9, 1915. Previous to that date respondent paid commissions of six and eight per cent on sales. After the letter of April 9, 1915, they paid a commission of only five per cent. In said letter the commissions were fixed in the sum of fifteen cents per box. On December 2, 1915, respondent wrote to said Alexander-Callen & Co. as follows:

"You have been serving us in the distribution of our goods on a basis of 5% of the sales. At the present time there is no account unpaid between us, other than the current month. On April 9th, 1915, we submitted to you a written offer for you to handle our products on a commission basis of 15c per case (case containing 24 packages). This offer was conditional upon the price of flour being normal, and at no time since April 9th has flour been normal, and the prospects are at the present time that, due to the war troubles in Europe, it will not again reach a normal level for at least twelve to eighteen months. This offer has never been accepted by you, and we hereby withdraw the offer, for the reason that it has not been accepted; for the reason that flour has not been normal, and that there is no immediate prospect of its reaching a normal level; and for the further reason that there has been, since the date of April 9th, a change in the personnel of your company. We hereby withdraw our offer of April 9, 1915."

Notwithstanding that said copartnership in reply to said letter stated that the terms of said letter were not agreed to, it nevertheless continued to sell the product of respondent under an arrangement different from that stated in said letter of April 9, 1915, until February 9, 1916, at which time respondent informed said copartnership that it would no longer fill any orders received from said copartnership, and that it intended to solicit the trade itself, which it afterward did.

According to the testimony of William F. Schiffer, who was the president of the respondent company at the time these transactions took place, the said copartnership did not operate under the terms of said letter of April 9, 1915. The price of flour was a matter which seemed to have made it impossible to adopt any definite arrangement for the sale of the goods and pending such uncertain and unsettled conditions the parties operated under the tentative agreement from month to month, and received a commission of five per cent on their sales. During that period conversations were had between the parties wherein appellant protested against the low commissions of five per cent, and as a result an adjustment was effected whereby respondent contributed toward the payment of the salaries of two members of said copartnership to the extent of paying one of them twenty-five dollars per week and the other fifteen dollars per week for the months of May, June, and July, 1915, besides defraying certain traveling expenses of the members of the firm while selling respondent's goods. This and like testimony shown by the record was sufficient to support the trial court in finding that the proposal contained in the letter of April 9, 1915, was never accepted and that it was consequently inoperative. Therefore, under the established rule the conclusions reached by the trial court are controlling.

Judgment affirmed.

Waste, P. J., and Richards, J., concurred.